```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                 :
ROY ESSEX, et al.
                                 :
     v.                          : Civil Action No. DKC 2003-3276
                                 :
DOUGLAS A. RANDALL, et al.
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Employment Retirement Income Security Act of 1974 ("ERISA") case are the amended petition of Plaintiffs Roy Essex, Eric Weiss, Frank Stegman, Ritchie Brooks, William Johnson, and John Woodall, as Trustees of the Warehouse Employees Union Local No. 730 Health & Welfare Trust Fund ("the Fund"), for attorneys' fees (paper 34), and the request of Defendant James F. Farmer for a hearing regarding Plaintiffs' request (paper 35). For the reasons that follow, the court will grant in part and deny in part Plaintiffs' petition. The court will deny Mr. Farmer's request for a hearing pursuant to Local Rule 105.6.

**I. Background**

The Fund, an employee benefits plan that provides health and welfare benefits to its participants and their eligible dependents, sued fund participant Defendant Douglas A. Randall and his attorney, Defendant James F. Farmer, for failure to comply with a subrogation agreement ("Agreement") entered into by the Fund and both Defendants. Defendant Randall was injured in an automobile

accident.  He collected $9,646.50 in benefits from the Fund.  Then, without the Fund's knowledge, he sued the injuring party and settled for $20,000.  According to the terms of the Agreement, Randall was required to notify the Fund of any such lawsuit or settlement, and to reimburse the Fund for the full amount he had collected from it with his settlement proceeds.  Defendant Farmer, also a signatory to the Agreement and bound by its terms, was aware of the settlement and received an attorney's fee in connection with it, but also failed either to notify or to reimburse the Fund.

On March 15, 2005, this court entered an order granting (in part) default judgment against defendant Douglas A. Randall; granting (in part) summary judgment against defendant James F. Farmer; entering judgment in favor of Plaintiffs; providing relief in the form of both an equitable lien on any settlement proceeds held by either Defendant, not to exceed $9,646.50, and a constructive trust on an escrow account containing at least some of the attorney's fee Farmer received as a result of the settlement; and granting Plaintiffs reasonable attorneys' fees.[1]  Plaintiffs

---

[1] The court denied Plaintiffs' motion for default judgment against Defendant Douglas Randall as to Count II, the unjust enrichment claim, and dismissed the following claims because they were preempted under ERISA: (a) Count II, unjust enrichment against Defendant Randall; (b) Count III, unjust enrichment against Defendant Farmer; (c) Count IV, conversion against Defendant Farmer; (d) Count V, breach of contract against Defendant Farmer; (e) Count VI, negligence against Defendant Farmer, and (f) Count VII, fraud against Defendant Farmer.  The court also denied Plaintiffs' request for punitive damages in the amount of $10,000
(continued...)

were directed to submit a declaration of attorney's fees to the court.

On March 24, 2005, Plaintiffs filed a submission for attorneys' fees and costs.[2]  The submission was not in accordance with Local Rule 109.2 and was generally insufficient.  On May 3, 2005, the court denied Plaintiffs' fee request without prejudice, and instructed Plaintiffs to submit a properly supported petition in compliance with Rule 109.2 no later than May 13, 2005.  (Paper 33).  In its memorandum opinion (paper 32), the court noted multiple deficiencies in Plaintiffs' submission.  For example, Plaintiffs did not set forth "the nature of the case," "the specific claims" as to which Plaintiffs did not prevail, or "the customary fee for like work prevailing in the attorneys' community."  Further, Plaintiffs failed to justify the number of attorneys involved, or the reason for duplication of tasks among the attorneys.  The court stated: "The proper format and content of

---

[1](...continued)
because Section 502(a)(3) of ERISA, the only law under which the court found Defendants liable, does not provide for punitive damages.

[2] Plaintiffs also requested that the court supplement its March 15, 2005, Order to clarify that Defendants are jointly and severally liable for the total amount of the judgment rendered including attorneys' fees and costs.  For the reasons noted in the court's earlier opinion (paper 32, at 4), the court did not grant Plaintiffs' request because it was not possible from that submission to make that determination.  While the current submission is only slightly more helpful, the court will make the attorneys' fee award the joint and several liability of both defendants.

requests for attorneys' fees are set forth in Appendix B to the Local Rules, 'Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases,' which are applicable to ERISA cases pursuant to footnote 1 of that Appendix." (Paper 32, at 3).

On May 12, 2005, Plaintiffs filed an amended submission for attorneys' fees and costs. (Paper 34). In response to the court's earlier Order, Plaintiffs include brief statements regarding the relief that was awarded and disclosing that: "The court denied default judgment as to Count II (unjust enrichment) of the original Complaint, and dismissed Plaintiffs' claims in Counts II through VII." Plaintiffs also provide the average rates for attorneys with like experience who practice in the community, which they define as Washington, D.C. In justification for the number of attorneys involved and the apparent duplication of tasks among several attorneys, Plaintiffs state that "there was no duplication of work on this matter," and explain the roles of all attorneys involved. The thrust of Plaintiffs' explanation is that a first-year attorney conducted research and wrote initial drafts. This attorney's work was directly supervised and edited by a third-year attorney, who in turn was under the direction of a partner at the law firm.

The amended submission is only slightly more helpful than the original, and fails to comply with the directives of the local rules. Nevertheless, because the court determined that defendants

4

were responsible for a reasonable attorneys' fee in this case, the court will attempt to use the information provided to make a determination.

## II. Analysis

"A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate." *Xiao-Yue Gu v. Hughes Stx Corp.*, 127 F.Supp.2d 751, 764 (D.Md. 2001). As this court has noted:

> In deciding what constitutes a "reasonable" number of hours and rate, the district court generally is guided by the following factors:
>
>> "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."
>
> *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (quoting *Barber*

>     v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28
>     (4th Cir. 1978))).

*CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 787 (D.Md. 2000). *See also Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F.Supp.2d 479, 490 (D.Md. 2005) (quoting *CoStar Group, Inc.*, 106 F.Supp.2d at 787). Plaintiffs request $ 50,061.15 in attorneys' fees. This amount reflects the total hours spent by the four attorneys who worked on the case, multiplied by their respective billing rates, minus a ten percent discount that Plaintiffs are customarily afforded.[3]  Defendant Farmer opposes Plaintiffs' request, and asserts that the fees are "grossly disappropriate to the actual damages sustained by Plaintiff."[4]

**1.  Reasonable Hours**

"A fee applicant has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Costar Group, Inc.*, 106

---

[3] In reviewing the fee request, the court finds that Plaintiffs' total submission for Ms. Doolittle is $270 lower than it should be when all hours are added, indicating that one hour of work performed in 2003 was not included.  The court will adjust its award to rectify this error.

[4] Defendant Farmer also argues that the Plaintiffs' attorneys have a contractual relationship with the Fund and therefore the fees should be based on an hourly rate "charged by the union."  The court believes that Mr. Farmer is referring to the discounted rate charged by Plaintiffs' attorneys, which is, as noted, the rate that Plaintiffs seek.  Defendant Randall did not respond to Plaintiffs' petition.

F.Supp.2d at 788. Although an attorney is not required to account for how each minute of his time was spent, he or she must designate the subject matter related to each time expenditure. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The amount of hours Plaintiffs submit for compensation is unreasonable.[5] Four attorneys worked on this case – Mr. DeLancey, Jr., a partner, Ms. Doolittle and Mr. Becherer, two third-year associate attorneys, and Ms. Schmitt, a first-year associate attorney.[6] Mr. DeLancey, in his declaration, summarily states that there was no duplication of efforts and asserts that Ms. Schmitt completed initial research and drafts, which were edited by a third-year attorney. Mr. DeLancey acted as a final reviewer. The submitted time entries do not reflect this characterization. For example, there are multiple time entries that suggest, both in

---

[5] At the outset, the court notes that Plaintiffs' submission is not properly formatted in accordance with the Guidelines in Appendix B to the Local Rules. The Guidelines specifically require fee applications to be organized by litigation phase. For example, fees for case development and administration should be separated from fees pertaining to pleadings; fees related to motions should likewise be separately listed. Despite the court's earlier opinion clarifying that the Guidelines provide the proper format for an attorneys' fee submission, there is no indication that Plaintiffs made any effort to organize their fees accordingly. Although the court chooses not to deny attorneys' fees entirely, based on this deficiency, Plaintiffs make it much more difficult for this court to determine what fees should be granted by not submitting a properly formatted request.

[6] The third-year attorneys' work was performed consecutively. Ms. Doolittle worked on the case until April 2004 when she left the firm. Her responsibilities were assumed by Mr. Becherer in April 2004.

their qualitative description and the collective amount of time reported, that *both* the first-year and third-year attorneys completed research and wrote initial drafts. As this court has noted:

> After reviewing the billing records submitted, the court must ensure that the prevailing attorneys have exercised "billing judgment." [*Hensley*, 461 U.S.] at 434, 103 S.Ct. 1933. Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Time that is "excessive, redundant, or otherwise unnecessary" should be excluded. *Id*.

*Costar Group, Inc.*, 106 F.Supp.2d at 789. *See also Dameron v. Sinai Hosp. of Balt., Inc.*, 644 F.Supp. 551, 557 (D.Md. 1986) (considering duplication of efforts in determining whether attorney fee request was reasonable).

There is no indication that Plaintiffs made any attempt to exercise "billing judgment" and delete excessive hours. Moreover, it is clear that this case was overstaffed – the requested attorneys' fees totaled more than $50,000, yet the relief sought was less than $20,000. There is no reason that all tasks, outside of the final review by Mr. DeLancey, could not have been performed by a third-year associate within the 109 total hours that Ms. Doolittle and Mr. Becherer collectively billed. To the extent that the law firm used this case as a learning experience for Ms. Schmitt, the first-year associate, her time should not billed. *See Hensley*, 461 U.S. at 434. ("Hours that are not properly billed to

8

one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority" (internal quotation marks and citation omitted)). Accordingly, the court finds that the duplication of efforts is not justified, and will deduct Ms. Schmitt's hours from the fee award.

Second, Plaintiffs have numerous entries from multiple attorneys regarding intra-office conferences. The Guidelines make clear that as a general rule, only one lawyer is to be compensated for such meetings. However, the Guidelines provide that compensation of multiple lawyers may be justified "at periodic conferences of defined duration held for the purpose of work organization and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of litigation."

The court is unable to determine whether compensation for multiple attorneys is justified in each case because the time entries in question are not sufficiently detailed for the court to determine the meeting's purpose. For example, on November 3, 2003, both Mr. DeLancey and Ms. Doolittle billed time for an intra-office conference. The descriptions provided are: "Conference with K. Doolittle re: Randall complaint" and "Conference with M. DeLancey re: Randall complaint," respectively. Accordingly, the court will strike overlapping time entries and, in accordance with the local rules, will grant fees only for the time spent by the attorney

9

billing at the higher rate. Specifically, .70 hours will be deducted from Ms. Doolittle's submission.[7]

Third, although Plaintiffs note that the court dismissed multiple claims and did not award all requested relief, they have made no effort to separate out their time by claim or justify why they may be entitled to fees for work completed on unsuccessful claims. *See Hensley*, 461 U.S. at 434-35 (stating that attorneys' fees may be awarded for unsuccessful claims where those claims are interrelated with prevailing claims). Furthermore, numerous entries are described too generally for the court to determine how much time was allocated in relation to each claim. *See e.g.*, (paper 34, ex. 1, entry for Mr. Becherer) (describing task as "drafting summary judgment motion").

The Fourth Circuit has interpreted the ERISA provision providing for attorneys' fees, 29 U.S.C. § 1132(g), as authorizing an award of fees "only to a prevailing party." *Griggs v. E.I. Dupont de Nemours & Co.*, 385 F.3d 440, 454 (4th Cir. 2004). In order to "prevail," a party need not meet with success on all claims, rather the party must "receive at least some relief on the

---

[7] This time pertains to .20 hours billed on November 3, 2003, and .50 hours billed on April 15, 2004, for meetings with Mr. DeLancey, which also were reported on Mr. DeLancey's time submission. Ms. Schmitt also billed 2.2 hours of overlapping time for intra-office conferences. However, because the court will not award fees for Ms. Schmitt's time, it need not delete these hours from the fee calculation.

10

merits." *Id*.  In *Hensley*, 461 U.S. at 434-35, the Supreme Court noted:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."  *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D.Cal. 1974).

*Hensley*, 461 U.S. at 434-35.

Where awards are limited by the prevailing party requirement, unrelated claims should be treated as if brought in separate lawsuits, and the claimant should not recover fees for those unsuccessful claims.  *See Hensley*, 461 U.S. at 435.  The district court has discretion to determine whether claims are related. *Buffington v. Balt. County,* 913 F.2d 113, 128 (4th Cir. 1990). Although there is no clear definition of relatedness, the Fourth Circuit has described related claims as those that "involve the same common core of facts or related legal theories."  *Plyer v. Evatt*, 902 F.2d 273, 280 (4th Cir. 1990)*.  See also Buffington*, 913 F.2d at 128 (referring to interrelated claims as those that are "inextricably intermingled").  Even where claims are deemed interrelated, if a plaintiff has achieved only partial success, "the product of hours reasonably expended on the litigation as a

11

whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436.

Here, Plaintiffs' claims involve a common core of facts. All claims center on the fact that Defendants signed a subrogation agreement requiring them to pay back third-party funds, which they failed to do. Even though the claims are interrelated, the fact that Plaintiffs did not prevail on every claim must be considered. Plaintiffs prevailed on their ERISA claim, but were unsuccessful on the unjust enrichment, breach of contract, conversion, negligence, and fraud claims. Plaintiffs requested relief in the amount of $9,646.50, plus $10,000 in punitive damages. The court denied punitive damages because they are not available under ERISA. Based on the "results obtained," the court finds that the hours expended on the litigation "as a whole" are excessive, and that Plaintiffs' total fees should be reduced by half. *See Hensley*, 461 U.S. at 436-37.

**2. Reasonable Billing Rates**

"The reasonable hourly rate is based on the prevailing market rate commanded by lawyers of similar skill, experience, and reputation in the relevant community." *Xiao-Yue Gu*, 127 F.Supp.2d at 767. Mr. DeLancey asserts in his declaration: "According to the PriceWaterhouseCoopers Billing Rate Survey, the average rate for an [sic] equity partner in a D.C. law firm in 2004 was $470. The average rate for a first year associate was $209, and the rate for

12

a third year associate was $250." (Paper 34, at 3 n.1). Plaintiffs request the following rates:[8]

| Mr. DeLancey | $425/hour (2003); $450/hour (2004) |
| Ms. Doolittle | $270/hour (2003); $275/hour (2004) |
| Mr. Becherer | $275/hour (2004) |

Mr. Delancey, a partner at the law firm of Dickstein Shapiro in Washington, D.C., has practiced law for "more than thirteen years." As noted, both Ms. Doolittle and Mr. Becherer were third-year associate attorneys and Ms. Schmitt was a first-year associate attorney at Dickstein Shapiro during the period in which each worked on the case. Pursuant to this court's Guidelines on fee petitions, the prevailing market rate for an attorney in this community with Mr. DeLancey's experience is $200-275. The prevailing rate for attorneys with Mr. Becherer's, Ms. Doolittle's, and Ms. Schmitt's experience is $135-170. Other than citing the survey, Plaintiffs provide no justification for the court to go outside of the Guidelines and award the higher hourly rates. For example, there is no indication that the work performed on this case was extremely novel or difficult, or that the attorneys were highly experienced in ERISA matters. The Guidelines provide a fair and reasonable prevailing rate and departure from them is not

---

[8] These rates would be reduced by ten percent, based on the discount that Plaintiffs receive. Ms. Schmitt's hourly rate is not included because her time is duplicative and will not be compensated.

justified in this instance. Accordingly, the court finds the following rates to be reasonable:

| Mr. DeLancey | $275/hour |
| Mr. Becherer | $150/hour |
| Ms. Doolittle | $150/hour |

### 3. Adjusted Fees

After making the rate and hour adjustments discussed above, the court arrives at the following lodestar calculation:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Mr. DeLancey | 6.5 | $275 | $1,787.50 |
| Ms. Doolittle | 44.3 | $150 | $6,645.00 |
| Mr. Becherer | 64 | $150 | $9,600 |
| **Total** | 114.8 | | $18,032.50 |
| 50% Reduction | | | $ 9,016.25 |

### 4. Joint and Several Liability for Fees

The court's opinion found that both Defendants were responsible for attorneys' fees, but noted that each was possibly in a different position with regard to the hours expended. Courts have fashioned a variety of methods for allocating fees between defendants. In a scholarly opinion, albeit not published, Magistrate Judge Grimm has outlined the various methods:

> One method is simply to divide the fees equally among the defendants. *See, e.g., Wilson v. Stocker*, 819 F.2d 943, 950-52 (10th Cir. 1987) (affirming equal apportionment of

14

fees); *Dunten v. Kibler*, 518 F.Supp. 1146, 1159 (N.D.Ga. 1981); *Vulcan Soc'y of Westchester County, Inc. v. Fire Dep't of City of White Plains*, 533 F.Supp. 1054, 1064 (S.D.N.Y. 1982); *but see Grendel's Den v. Larkin*, 749 F.2d 945, 959 (5th Cir. 1984) (holding that district court "abused discretion by simply dividing the burden equally"); *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125 (9th Cir. 1981)(expressly rejecting pro rata method as obviating the court's discretion and not ensuring a fair result).

Another method, and one the Court finds to be equitable and practical, is the apportionment of fees primarily according to each defendant's percentage of culpability and other objective factors. *See, e.g., Grendel's Den*, 749 F.2d at 959 (one defendant responsible for twenty-five percent of fees; other defendant responsible for seventy-five percent of fees); *Jose v. Ambach*, 669 F.2d 865, 871 (2nd Cir. 1982) (fees apportioned eighty percent to the city and twenty percent to the state); *Crosby v. Bowling*, 683 F.2d 1068 (7th Cir. 1982); *Dean v. Gladney*, 621 F.2d 1331, 1339-40 (5th Cir. 1980) (relative culpability); *Rogers v.. Int'l Paper Co.*, 510 F.2d 1340 (8th Cir. 1975), *vacated and remanded on other grounds*, 423 U.S. 809 (1975) (looking to relative responsibility and ability to pay as bases for determining apportionment); *Spell v. McDaniel*, 616 F.Supp. 1069, 1115 (E.D.N.C. 1985), *aff'd in part and vacated in part on other grounds*, 824 F.2d 1380 (4th Cir. 1987). Finally, imposing joint and several liability, as a method of apportionment, has been utilized when "two or more defendants actively participated in a constitutional violation." *Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996); *see also Walker*, 99 F.3d at 772-73 (joint and several liability appropriate because of "single indivisible injury"); *Koster v. Perales*, 903 F.2d 131, 138 (2nd Cir. 1990); *Riddell v. National Democratic Party*, 712 F.2d 165, 169 (5th Cir. 1983).

*Thompson v. United States Dep't of Housing & Urban Dev.*, No. Civ.A. MGJ-95-309, 2002 WL 31777631, at *14 (D.Md. Nov. 21, 2002) (footnote omitted).

Judge Grimm noted the difficulty in determining how to apportion fees fairly, but stated that the court should make "every effort to achieve the most fair and sensible solution that is possible" without turning the fee determination into its own "mini-litigation." *Thompson*, 2002 WL 31777631, at *15 (internal quotation marks omitted). Judge Grimm emphasized that, like the determination of the amount of the fee award, a trial court has wide discretion in determining how to allocate fees among defendants. *Id*. Judge Grimm, applying this reasoning, concluded that the factors enumerated in *Grendel's Den*, 749 F.2d at 960, were instructive:

> Thus, recognizing the less-than-perfect means for arriving at an "efficient and fair" rate of apportionment, this Court finds the factors enumerated in *Grendel's Den*, 749 F.2d at 960, relevant in making such a determination. In *Grendel's Den*, the court looked to the nature of the injury, whether it was singular in nature and who caused it; the amount of time the Plaintiffs had to spend litigating against the respective defendants; and, of the least importance, the ability of the defendants ability to pay. *Id*.

*Thompson*, 2002 WL 31777631, at *15.

The *Grendel's Den* factors weigh in favor of making Defendants jointly and severally liable for the fee award. The nature of the injury is singular and was caused by the dereliction of both

16

Defendants.  While Mr. Randall suffered a default, the nature of the claims required Plaintiffs to file a substantial memorandum concerning relief, which mirrored the memorandum filed in support of summary judgment.  The time spent memorializing his default was *de minimus*.  Thus, there does not appear to have been a substantial imbalance in the hours expended as to each Defendant, and the award will be joint and several.

**III.  Conclusion**

Based on the foregoing discussion, the court will award fees in the amount of $ 9,016.25.  The court will deny Mr. Farmer's request for a hearing.  A separate Order will follow.

              /s/
DEBORAH K. CHASANOW
United States District Judge